1

2

3

4

5

6

7

8

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

9 In re

10 LAKE COUNTY GRAPEVINE NURSERY
LLC,                                                    No. 10-12579

11

Debtor(s).

12 _____/

13 Memorandum on Motion to Dismiss
_____

14

15      Until December 17, 2007, Joachim Hollerith and Eckhard Kaesekamp each held a 50%

16 membership interest in American Nursery LLC.  American Nursery was involved in a business

17 relationship with Lake County Grapevine Nursery LLC ("LCGN") and Lake County Grapevine

18 Nursery Operations LLC ("LCGNO"), now both Chapter 11 debtors in possession.  American Nursery

19 marketed and sold grapevines produced by LCGN and LCGNO in return for a percentage commission

20 of each sale.  Nevada Viewpoint West, Inc. ("NVWI"), through its owner John Fanscy, had an

21 investing role in LCGN and LCGNO.

22     In 2007, the business relationship grew strained.  After mediation, American Nursery,

23 Hollerith, Kaesekamp, NVWI, and the Debtors entered into a Settlement Agreement, effective

24 December 17, 2007.  Under the Settlement Agreement, LCGNO obtained American Nursery's

25 customer accounts and a non-compete agreement from Hollerith, who became the sole member of

26 American Nursery.  In exchange, Kaesekamp and NVWI, via LCGN and LCGNO, agreed to pay

Hollerith $1,050,000, in the form of an up-front payment of $250,000 and monthly installments of

1    $16,666.67 from March 2008 to February 2012. If LCGN and LCGNO failed to cure any default on

2    fifteen days' notice, Hollerith had the right to accelerate the balance of their payment obligations.

3         As security for the Settlement Payment, Kaesekamp and NVWI pledged their membership

4    interests in LCGN and LCGNO to Hollerith, as evidenced by a Pledge Agreement. If LCGN and

5    LCGNO defaulted on their payment obligations, the Pledge Agreement automatically cut off

6    Kaesekamp and NVWI's voting and distribution rights in LCGN and LCGNO, and vested those rights

7    in Hollerith. The Pledge Agreement also gave Hollerith the option to (a) take possession of

8    Kaesekamp and NVWI's membership interests or (b) sell those interests at a public or private sale.

9         In October 2009, LCGN and LCGNO filed suit against Hollerith and American Nursery for

10    breach of the Settlement Agreement and fraud. The case was removed to the Northern District of

11    California on October 14, 2009. On October 20, 2009, the District Court issued a preliminary

12    injunction preventing Hollerith from (a) taking possession of Kaesekamp and NVWI's membership

13    interests in LCGN and LCGNO or (b) selling those interests at a public or private sale. The injunction

14    does not affect the other provisions of the Pledge or Settlement Agreement.

15         On July 7, 2010, LCGN and LCGNO filed voluntary petitions for relief pursuant to Chapter 11

16    of the Bankruptcy Code, signed by Kaesekamp as controlling member of the entities. Hollerith has

17    moved the court for dismissal of both cases on the grounds that Kaesekamp lacked authority to file

18    petitions for relief on behalf of LCGN and LCGNO .

19         A person filing a voluntary petition for bankruptcy on behalf of a business entity must be duly

20    authorized to do so. *Price v. Gurney*, 324 U.S. 100, 106 (1945). If the person lacks authority, the

21    court has no alternative but to dismiss the petition. *Id*. State law generally determines who has

22    authority to file a bankruptcy petition. *Id.* at 106-07.

23         The issue here is whether a pledge of an equity interest is self-executing as to voting rights or

24    whether state law regarding formal transfer of voting rights must be followed. In the absence of

25    specific state law requiring further proceedings to obtain the voting rights, courts generally conclude

26    that the occurrence of a default is sufficient to trigger the transfer of voting rights to the pledgee. See

2

1   *In re Tominaga,* 325 B.R. 653, 658-59 (Bankr.W.D.Fla.2005)*; In re Heidel House Enters., Inc.*, 40

2   B.R. 932 (Bankr.W.D.Wis.1984). However, when there is a state law courts generally require that the

3   right to vote be actually transferred on the records of the entity before authority to vote is lost. See,

4   e.g., *Hickory Point Ind., Inc. v. Hickory Holding Corp.* (*In re Hickory Point Ind., Inc.*), 50 B.R. 303

5   (Bankr.M.D.Fla.1985) (record shareholders have right to authorize bankruptcy filing where shares

6   have not been transferred as required by state law).

7         The court believes that the proper rule of law is that the occurrence of a default is sufficient to

8   transfer voting rights unless state law provides otherwise. The court must therefore look to California

9   statutes in order to resolve the issue.

10        This dispute is governed by § 17150 and § 17301(c) of the California Corporations Code. The

11   former provides that a limited liability company shall be managed by its members unless its articles of

12   organization provide otherwise. The latter provides that "The pledge of, or granting of, a security

13   interest, lien or other encumbrance in or against any or all of the membership interest of a member

14   shall not cause the member to cease to be a member or to grant to anyone else the power to exercise

15   any rights or powers of a member."

16        Read together, the two statutes make it clear that when membership rights are pledged as

17   collateral the pledging member retains the voting rights until the secured creditor has enforced the

18   security agreement and become the member. Thus, neither the pledging of the membership rights as

19   security nor the declaration of a breach by the secured party is sufficient to divest the pledging member

20   of the right to vote. To hold otherwise would permit someone who is not a member or manager to

21   control a limited liability company.

22        There is of course some temptation to grant the motion to dismiss, as there are ample

23   indications that this Chapter 11 case was filed in an attempt by Kaesekamp and NVWI to maintain

24   control of the debtor notwithstanding their breach of their agreements. However, a rule allowing

25   dismissal for the reasons stated in the motion would create confusion and disputes over the legitimacy

26   of filings whenever an ownership interest in the debtor has been pledged as security. Such uncertainty

3

1    is avoided by a clear rule: only the members or lawful managers are entitled to vote on behalf of a

2    limited liability company, notwithstanding a pledge of membership rights as collateral.

3            That does not mean that Hollerith is without remedies.  The court is quite willing to entertain a

4    motion pursuant to  § 305(a) of the  Bankruptcy Code seeking to stay Chapter 11 proceedings until

5    Hollerith has taken the proper steps to replace Kaesekamp and NVWI as members.  Time for such a

6    motion may be shortened as necessary.  In the meantime, the court doubts that the debtor's proposed

7    plan can be confirmed due to its elimination of membership interests and is quite willing to make such

8    orders as are necessary to remind debtor's counsel that he represents the estate only and may not, by

9    action or inaction, assist Kaesekamp and NVWI in their bid to retain control of the debtor.  These are

10   matters for further hearing.

11           For the foregoing reasons, the motion to dismiss will be denied, without prejudice to other

12   remedies or to a motion to dismiss on other grounds.  Counsel for the debtor shall submit an

13   appropriate form of order approved by counsel for Hollerith.

14

15   Dated:  November 30, 2010

16

17                                                    _____
                                                     Alan Jaroslovsky
18                                                   U.S. Bankruptcy Judge

19

20

21

22

23

24

25

26

                                                      4